UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

JOHN SAWYER PRESTON, BRIAN
ORENSTEIN and JORGE DEYARZA,

                Plaintiffs,

v.

FT 17 LLC d/b/a VELOCE CLUB, FT 7th
AVENUE LLC d/b/a BAR VELOCE
CHELSEA, FT Café LLC BAR CARRERA
EAST VILLAGE, FT 245 CORP. d/b/a BAR
VELOCE EAST VILLAGE, GIULIETTA
MANAGEMENT CORP., FTTCCM LLC d/b/a
VELOCE PIZZERIA, WEST HOUSTON
MACDOUGAL LLC d/b/a BAR CARRERA
GREENWICH VILLAGE, and FREDERICK
TWOMEY,

                Defendants.

No. 11-civ-2556 (WHP)

## NOTICE OF DEFENDANTS' MOTION
## FOR PARTIAL SUMMARY JUDGMENT

**PLEASE TAKE NOTICE** that Defendants FT 17 Cleveland LLC d/b/a Bar Veloce (incorrectly sued herein as FT 17 LLC d/b/a Veloce Club), FT Seventh Ave. LLC d/b/a Bar Veloce (incorrectly sued herein as FT 7th Avenue LLC d/b/a Bar Veloce Chelsea), FT Cafe LLC d/b/a Bar Carrera (incorrectly sued herein as d/b/a Bar Carrera East Village), FT 245 Corp. d/b/a Bar Veloce (incorrectly sued herein as d/b/a Bar Veloce East Village), Giulietta Management Corp., FTCCM LLC d/b/a Solex (incorrectly sued herein as FTTCCM LLC d/b/a Bar Veloce Pizzeria), West Houston MacDougal, LLC d/b/a Bar Carrera (incorrectly sued herein as West Houston MacDougal LLC d/b/a Bar Carrera Greenwich Village), and Frederick Twomey, by their attorney, Law Office of Kristine A. Sova, will move this Court, on the 8th day of February,

2013 at 11:00 a.m., or as soon thereafter as counsel may be heard, before the Honorable William H. Pauley III, United States District Judge, in the United States District Court, Southern District of New York, located at 500 Pearl Street, New York, New York, for an Order, pursuant to Rule 56 of the Federal Rules of Civil Procedure, granting Defendants partial summary judgment by: (1) dismissing Plaintiffs' claim for spread-of-hours pay under the New York Labor Law that predates January 1, 2011; (2) finding that, as a matter of law, Plaintiffs cannot prevail on their tip-based claims premised on Defendants' former method of distributing tips to tip-eligible employees; (3) dismissing Plaintiffs' claims for liquidated damages under the New York Labor Law that are associated with (a) Plaintiffs' claim for spread-of-hours pay under the New York Labor Law that predates January 1, 2011 and (b) Plaintiffs' tip-based claims premised on Defendants' former method of distributing tips to barback employees; (4) applying the shorter (two-year) statute of limitations under the Fair Labor Standards Act on Plaintiffs' tip-based claims premised on Defendants' former method of distributing tips to barback employees; and (5) granting such other and further relief as this Court deems just and proper.

**PLEASE TAKE FURTHER NOTICE** that, in support of their motion, Defendants will rely upon: (1) the Declaration of Kristine A. Sova, dated December 19, 2012, with its attached exhibits; (2) the Declaration of Frederick E. Twomey, dated December 19, 2012, with its attached exhibits; (3) the Declaration of Mercedes Kaiser, dated December 14, 2012, with its attached exhibits; (4) Defendants' Local Civil Rule 56.1 Statement of Undisputed Facts, annexed hereto; and (5) Memorandum of Law in Support of Defendants' Motion for Partial Summary Judgment.

Dated: December 19, 2012
      New York, New York

Respectfully submitted,

_____
Kristine A. Sova
Law Office of Kristine A. Sova
411 Lafayette Street, 6th Floor
New York, NY 10003
Tel. (646) 558-2296

*Attorney for Defendants*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| JOHN SAWYER PRESTON, BRIAN ORENSTEIN and JORGE DEYARZA,<br><br>                    Plaintiffs,<br><br>v.<br><br>FT 17 LLC d/b/a VELOCE CLUB, FT 7th AVENUE LLC d/b/a BAR VELOCE CHELSEA, FT Café LLC BAR CARRERA EAST VILLAGE, FT 245 CORP. d/b/a BAR VELOCE EAST VILLAGE, GIULIETTA MANAGEMENT CORP., FTTCCM LLC d/b/a VELOCE PIZZERIA, WEST HOUSTON MACDOUGAL LLC d/b/a BAR CARRERA GREENWICH VILLAGE, and FREDERICK TWOMEY,<br><br>                    Defendants. | No. 11-civ-2556 (WHP) |

## DEFENDANTS' LOCAL CIVIL RULE 56.1
## STATEMENT OF UNDISPUTED FACTS

Pursuant to Local Civil Rule 56.1, Defendants FT 17 Cleveland LLC d/b/a Bar Veloce (incorrectly sued herein as FT 17 LLC d/b/a Veloce Club), FT Seventh Ave. LLC d/b/a Bar Veloce (incorrectly sued herein as FT 7th Avenue LLC d/b/a Bar Veloce Chelsea), FT Cafe LLC d/b/a Bar Carrera (incorrectly sued herein as d/b/a Bar Carrera East Village), FT 245 Corp. d/b/a Bar Veloce (incorrectly sued herein as d/b/a Bar Veloce East Village), Giulietta Management Corp., FTCCM LLC d/b/a Solex (incorrectly sued herein as FTTCCM LLC d/b/a Bar Veloce Pizzeria), West Houston MacDougal, LLC d/b/a Bar Carrera (incorrectly sued herein as West Houston MacDougal LLC d/b/a Bar Carrera Greenwich Village), and Frederick Twomey, by

their attorney, Law Office of Kristine A. Sova, hereby state the following facts as to which there is no genuine issue to be tried:[1]

### Facts Relevant to Defendants and Their Operations

1. With the exception of Defendant Giulietta Management Corporation, the corporate defendants, either currently or at one time, operated as wine or cocktail bars. (Twomey Dep. 25; Twomey Dec. ¶ 2.)

2. The defendant bar establishments include: Bar Veloce (various locations), Bar Carrera (various locations), Solex and Veloce Club. (Twomey Dec. ¶ 2.)

3. After Solex closed, FTCCM LLC was later re-opened as a restaurant by the name of Veloce Pizzeria. (Twomey Dec. ¶ 2.)

4. Defendant Frederick Twomey is a partner in all of the above wine and food establishments. (Twomey Dep. 13-15; Mailvaganam Dep. 8; Kaiser Dep. 128; Twomey Dec. ¶ 1; Kaiser Dec. ¶ 4.)

5. Twomey is also a principal of Giulietta Management Corp. (Twomey Dep. 13; Mailvaganam Dep. 9; Walker Dep. 9; Kaiser Dep. 126-127; Twomey Dec. ¶ 1; Kaiser Dec. ¶ 4.)

### Facts Relevant to Staffing and Service at Bar Veloce

6. In 2000, Twomey launched the Bar Veloce concept, a concept after which he patterned all of his other bars. (Twomey Dec. ¶ 3.)

---

[1] The facts set forth herein relate to, and are undisputed for purposes of, Defendants' motion for partial summary judgment only. For this reason, the facts set forth herein should not be construed as admissions or stipulations of fact with respect to any other part of this action.

References to supporting declarations are denoted as "[Last Name] Dec. ___", and references to deposition transcripts are denoted as "[Last Name] Dep. ___". Copies of all supporting declarations are submitted herewith, and copies of the deposition transcripts are appended to the Declaration of Kristine A. Sova, also submitted herewith.

2

7. "Bar Veloce", which means "fast bar" when translated from Italian into English, was intentionally named, because the concept is based on the idea that a patron should be able to quickly grab a glass of wine and a snack, without sacrificing quality or experience. (Twomey Dec. ¶ 4.)

8. While the Bar Veloce concept does not prevent guests from lingering and consuming more, Bar Veloce is very much a bar, not a restaurant. (Twomey Dec. ¶ 5.)

9. All tables and stools at Bar Veloce are bar height. (Twomey Dec. ¶ 5.)

10. The food items on the Bar Veloce menu consist of easily-prepared items like panini (Italian sandwiches), tea sandwiches, cheese and meat plates, and salads. (Preston Dep. 50; Orenstein Dep. 73-74; Twomey Dec. ¶ 5.)

11. The food items at Bar Veloce are assembled in the open and in front of the guests behind the bar. (Preston Dep. 44-45; Orenstein Dep. 73-74; Twomey Dec. ¶ 6.)

12. The food items at Bar Veloce are prepared by a barback, who also performs other functions. (Twomey Dep. 28; Mailvaganam Dep. 16; Walker Dep. 53-56; Twomey Dec. ¶ 6.)

13. The barbacks are sometimes referred to as "chefs," which is a term of endearment in the hospitality industry, as a sign of respect as well as "cooks", as both terms help distinguish the term "barback" from the term "bartender" particularly for non-native speakers of the English language. (Mailvaganam Dep. 19, 45-46; Kaiser Dec. ¶ 6; Twomey Dec. ¶ 7.)

14. Except for those times when Bar Veloce experimented with the addition of another service employee, the only other employee at Bar Veloce who works during service with the barback(s) is the bartender. (Preston Dep. 42-43; Deyarza Dep. 83, 89; Twomey Dep. 25-26, 56; Kaiser Dep. 18-19; Twomey Dec. ¶ 8; Kaiser Dec. ¶ 6.)

3

15. Outside of service, Bar Veloce has employed and continues to employ prep cooks to prepare the ingredients that compose the food items above, *i.e.*, roasted eggplant, caramelized onions, and basil pesto. (Twomey Dec. ¶ 9.)

16. Those prep cooks cook and prepare these items at times outside of service hours. Twomey Dec. ¶ 9.)

### Facts Relevant to Staffing and Service at Bar Carrera

17. In 2005, Twomey launched the Bar Carrera concept, which is a Spanish tapas-inspired spin on the Veloce concept. (Mailvaganam Dep. 12, 22-23; Twomey Dec. ¶ 10.)

18. Bar Carrera operated much like Bar Veloce in terms of staffing and service. (Orenstein Dep. 15-16, 19, 22-23; Deyarza Dep. 31; Twomey Dep. 34; Mailvaganam Dep. 11, 15, 17-18, 22-23; Twomey Dec. ¶ 10; Kaiser Dec. ¶ 6.)

19. In 2009, Twomey expanded the Second Avenue location of Bar Carrera (now closed) by adding a dining room. (Orenstein Dep. 19; Twomey Dec. ¶ 11.)

20. With the addition of the dining room, Twomey added a waiter to service the dining room on occasion, but the concept and remaining staffing otherwise remained unchanged. (Orenstein Dep. 38-39; Twomey Dec. ¶ 11.)

21. The Bar Carrera on West Houston Street, in which Stefan Mailvaganam is a partner, has never had a dining room. (Mailvaganam Dep. 8; Twomey Dec. ¶ 12.)

### Facts Relevant to Staffing and Service at Solex

22. In 2007, Twomey launched the Solex concept with a partner by the name of Christophe Chartron-Maichaud. (Preston Dep. 116-17; Twomey Dec. ¶ 13.)

23. Solex was a French iteration of the Veloce concept that initially operated more like a traditional restaurant because, unlike Twomey's other establishments, Solex had a

4

complicated food menu requiring a full kitchen and a professionally-trained chef. (Twomey Dec. ¶ 13.)

24. The kitchen was in a separate room and the kitchen staff had no direct interaction with customers. (Preston Dep. 107-08; Twomey Dec. ¶ 13.)

25. In the fall of 2008, the Solex menu was re-vamped to focus more on wine than on high-end savory French pastries. (Twomey Dec. ¶ 14.)

26. At this time, Solex was also reconfigured and the separate kitchen was closed, in effect transforming Solex into the French wine bar version of Bar Veloce in terms of staffing and service. (Twomey Dec. ¶ 14; Kaiser Dec. ¶ 6.)

### Facts Relevant to Staffing and Service at Veloce Club

27. In 2009, Twomey closed one of his Bar Veloce locations and opened Veloce Club. (Twomey Dec. ¶ 15.)

28. Veloce Club was an iteration of the Veloce concept that specialized in Italian cocktails with an extremely limited food menu. (Twomey Dec. ¶ 15.)

29. Veloce Club also operated like Bar Veloce in terms of staffing and service. (Orenstein Dep. 46, 48; Deyarza Dep. 90-91; Twomey Dec. ¶ 15; Kaiser Dec. ¶ 6.)

### Facts Relevant to Staffing and Service at Veloce Pizzeria

30. Also in 2009, Twomey closed Solex and opened Veloce Pizzeria. (Twomey Dec. ¶¶ 2, 16.)

31. Although the pizzeria had a small bar, it was first and foremost a traditional pizzeria. (Twomey Dec. ¶ 16.)

32. The pizzeria employed bartenders, who also served as waiters. (Orenstein Dep. 57; Twomey Dep. 35; Twomey Dec. ¶ 16; Kaiser Dec. ¶ 7.)

33. The pizzeria had a separate kitchen, with its own staff that did not interact with customers. (Orenstein Dep. 58-60; Twomey Dep. 35; Twomey Dec. ¶ 16; Kaiser Dec. ¶ 7.)

34. For a very brief time, not at issue in this lawsuit, the pizzeria also employed barbacks in the front of the house. (Twomey Dec. ¶ 16.)

### Facts Relevant to Giulietta Management's Role

35. Giulietta Management Corporation managed the "back office" of each of these establishments and was responsible for, among other things, the processing of payroll to be paid to the employees at these establishments. (Twomey Dep. 12-13, 15-16; Mailvaganam Dep. 8-9, 47-48; Walker Dep. 8-9, 15-16; Kaiser Dep. 16-18, 127; Twomey Dec. ¶ 17; Kaiser Dec. ¶ 4.)

36. Giulietta Management processed payroll with the aid of a professional payroll company. (Twomey Dep. 66, 78; Twomey Dec. ¶ 17; Kaiser Dec. ¶ 11.)

### Facts Relevant to Plaintiffs' Employment History with Defendants

37. For the most part, the three plaintiffs in this action worked as bartenders in some or all of the above establishments. (Preston Dep. 34, 106; Orenstein Dep. 8; Deyarza Dep. 30; Twomey Dec. ¶ 18.)

38. Plaintiff John Sawyer Preston was employed from around May 2005 until he was terminated around December 2006. (Preston Dep. 22, 34, 46; Twomey Dep. 23-24; Twomey Dec. ¶ 19.)

39. Preston was again employed from around May 2008, when he was rehired, until November 2010, when he walked off the job. (Preston Dep. 91, 114; Twomey Dec. ¶ 19.)

40. Until the last few months of Preston's employment, when he worked at Veloce Pizzeria, Preston's principal place of employment was Bar Veloce on Seventh Avenue. (Preston Dep. 25-27, 106; Twomey Dep. 23-24; Twomey Dec. ¶ 19.)

41. Preston was an investor in Veloce Pizzeria. (Preston Dep. 129; Twomey Dec. ¶ 20, Ex. A.)

42. Plaintiff Brian Orenstein was employed from around November 2007 until around February 2011. (Orenstein Dep. 7-8; Twomey Dep. 20; Twomey Dec. ¶ 21.)

43. With the exception of the last months of Orenstein's employment, Orenstein's principal place of employment was Bar Carrera on Second Avenue. (Orenstein Dep. 9-11; Twomey Dep. 20; Twomey Dec. ¶ 21.)

44. In the last months of his employment, Orenstein worked at Veloce Pizzeria and Bar Veloce on Seventh Avenue. (Orenstein Dep. 45, 56-57, 66; Twomey Dep. 20-22; Twomey Dec. ¶ 21.)

45. When he worked at Bar Veloce on Seventh Avenue, Orenstein was employed, not as a bartender, but in another supporting service position whose role was to barback, with the additional duty of taking wine orders from patrons sitting at four small tables away from the bar. (Orenstein Dep. 67-68; Twomey Dec. ¶ 21.)

46. Orenstein sought to be in an investor in Veloce Pizzeria but did not become one because he did not have the money to invest and Twomey would not loan him the money to invest. (Twomey Dec. ¶ 22, Ex. B.)

47. Plaintiff Jorge Deyarza was employed from around November 2008 until around October 2009, and then again from around November 2009 until April 2011. (Deyarza Dep. 22-24, 27, 80-81; Twomey Dep. 23; Twomey Dec. ¶ 23.)

48. During the 2008-2009 period, Deyarza was principally employed at Bar Carrera on West Houston Street. (Deyarza Dep. 22-23, 27-28; Twomey Dep. 14-15, 23; Twomey Dec. ¶ 23.)

49. Deyarza resigned from Bar Carrera on West Houston Street after an unsuccessful attempt to become a business partner of Twomey and Mailvaganam. (Deyarza Dep. 80-81; Twomey Dec. ¶ 23.)

50. About a month later, Deyarza began working at Bar Veloce on Seventh Avenue, where he remained principally employed until he resigned. (Deyarza Dep. 23-24, 27-28, 82, 91; Twomey Dep. 23; Twomey Dec. ¶ 23.)

51. Each of the plaintiffs worked occasional shifts at establishments other than their principal establishments, either to cover for another bartender or when they were looking to pick up extra shifts that were not otherwise available at their principal place of employment. (Orenstein Dep. 9-11, 46, 66-67; Deyarza Dep. 23-27; Twomey Dep. 14; Twomey Dec. ¶ 24.)

### Facts Relevant to Bartender and Barback Compensation

52. The defendant bar and restaurant establishments compensated their bartenders, including the plaintiffs, as follows: hourly at the reduced minimum wage for tipped workers, plus tips. (Preston Dep. 53-54; Deyarza Dep. 62; Twomey Dep. 39; Mailvaganam Dep. 14-15, 45; Walker Dep. 18-19; Twomey Dec. ¶ 25.)

53. Defendants did not pay spread-of-hours pay to the plaintiffs. (Twomey Dep. 76.)

54. Some bartenders were compensated at a higher hourly rate if the bartender, like Preston and Orenstein, was the head bartender. (Preston Dep. 25; Walker Dep. 18-19; Twomey Dec. ¶ 25.)

55. Defendants notified each of the plaintiffs of their intention to pay the reduced minimum wage for tipped workers. (Preston Dep. 28, 30; Orenstein Dep. 13-14; Deyarza Dep. 30; Mailvaganam Dep. 14-15; Twomey Dec. ¶ 26.)

56. The bartenders shared their tips with barbacks and tipped out a portion of their tips to the barbacks nightly. (Orenstein Dep. 32-33; Deyarza Dep. 54-55, 62, 85-86; Twomey Dep. 39; Mailvaganam Dep. 46-47; Twomey Dec. ¶ 27; Kaiser Dec. ¶ 6.)

57. Depending on whether there was one or two barbacks working, the tip out was usually 25% (for one barback) or 30% (to be split between two barbacks) of the total tips. (Orenstein Dep. 32-33, 51-52; Deyarza Dep. 65, 85-86, 90; Mailvaganam Dep. 46-47; Kaiser Dep. 70; Twomey Dec. ¶ 27; Kaiser Dec. ¶ 6.)

58. The bartenders did not share their tips with prep cooks or any other kitchen staff. (Twomey Dec. ¶ 27; Kaiser Dec. ¶ 7.)

59. Due to the ebbs and flows of an unstable economic environment, Defendants put a compensation guarantee policy in place for bartenders (and barbacks). (Orenstein Dep. 14, 35-36; Walker Dep. 19; Twomey Dec. ¶ 29.)

60. With the exception of the pizzeria, where the bartender guarantee was $150/shift, the bartender guarantee was $200 per shift. (Orenstein Dep. 14-15, 34-35, 63-64; Deyarza Dep. 75-76; Twomey Dec. ¶ 29; Kaiser Dec. ¶ 15, Ex. E.)

61. The practical effect of the bartender guarantee was that, on a weekly basis, the establishments would supplement the compensation of a bartender if he did not receive the net equivalent of $200 (or $150 for bartenders working at Veloce Pizzeria) per shift after tipping out the barbacks. (Orenstein Dep. 14-15; Twomey Dec. ¶ 30; Kaiser Dec. ¶ 15, Ex. E.)

62. By way of example, if a pizzeria bartender worked 4 nights/shifts one week, and only received the equivalent of $550 in hourly wage plus tips over the course of that week, the establishment supplemented the bartender's compensation with the sum of $50 for that week. (Twomey Dec. ¶ 30.)

9

63. As far as the bartenders' hours of work are concerned, management instructed bartenders that they would be paid for 10 hours per shift, unless a bartender noted otherwise for Giulietta Management. (Twomey Dep. 40, 58-59, 140-141; Twomey Dec. ¶ 31.)

64. Bartenders, like the plaintiffs, noted differing hours on nightly cash out sheets (the functional equivalent of a closing report) submitted to Giulietta Management. (Mailvaganam Dep. 33, 50; Walker Dep. 30; Twomey Dec. ¶ 31; Kaiser Dec., Ex. A [DEF 00557-58, 00824-25, 10811-12].)

65. Like the bartenders, barback compensation was comprised of hourly pay at the reduced minimum wage for tipped workers, plus tips, of which they were also notified. (Twomey Dep. 44; Mailvaganam Dep. 14-15, 46, 53, 55-56; Walker Dep. 19-20; Twomey Dec. ¶ 32.)

66. Aware that the amount of tips tipped out to a barback oftentimes would not provide the barbacks with a healthy living wage and to compete with other high-quality establishments, the establishments also provided a guarantee to the barbacks. (Orenstein Dep. 35-36; Twomey Dep. 44-45, 48; Mailvaganam Dep. 46, 48-49, 53, 55-56; Walker Dep. 19-20; Twomey Dec. ¶ 33.)

67. The guarantee for barbacks operated on a shift basis and varied from barback to barback, depending on length of service and skill level. (Twomey Dec. ¶ 33; Kaiser Dec. ¶ 13.)

68. The intended effect of the guarantee for barbacks was the same as that for the bartenders: that, on a daily basis, the establishments would supplement the compensation of a barback so that if a barback was guaranteed to net $100 minimum per shift, he would receive at least that net amount, even if the amount of tips dropped for him on a particular night would have resulted in less. (Twomey Dec. ¶ 34.)

69. Twomey came up with the compensation guarantee to be "fair and equitable" to staff that worked at locations or on nights that did not generate the kind of sales that also generated larger tips. (Twomey Dep. 134.)

70. Under the guarantee system in place for bartenders and barbacks, Twomey and his establishments supplemented roughly $275,000 for purposes of funding the bartender and barback guarantees during the time periods in question. (Twomey Dep. 44-47; Twomey Dec. ¶ 35; Kaiser Dec. ¶ 14.)

### Facts Relevant to Barback Compensation Only

71. Each week, a representative from Giulietta Management would pick up the nightly drops left by bartenders at each of the establishments. (Twomey Dep. 43-44; Mailvaganam Dep. 47-48; Walker Dep. 13, 20-21, 49; Kaiser Dec. ¶¶ 5, 9.)

72. The weekly drop included, among other things, sales information, tip-out information, and the tips that the bartenders dropped for the barbacks. (Twomey Dep. 43-44; Mailvaganam Dep. 47-48; Walker Dep. 14-15, 21; Kaiser Dec. ¶¶ 5, 9.)

73. Unlike bartenders, who took their tips with them at the end of a shift, barbacks did not take their tips with them at the end of their shift because their shift typically ended one hour before the bartender(s)' shift. (Walker Dep. 19; Kaiser Dec. ¶ 9.)

74. Giulietta Management maintained the barback tips in a cash box in the Giulietta Management office until they were distributed with payroll. (Twomey Dep. 43-44; Kaiser Dep. 78; Kaiser Dec. ¶ 10.)

75. The tips were never deposited into any bank account. (Kaiser Dec. ¶ 10.)

76. The tips were never treated as income at any of the establishments. (Kaiser Dec. ¶ 10.)

77. The tips were distributed to barbacks and other tip-eligible employees. (Kaiser Dep. 78, 82-83, 98-100, 117-18; Kaiser Dec. ¶ 10.)

78. The tips were declared as income to the barbacks via payroll. (Walker Dep. 14-15; Kaiser Dep. 29-30, 35; Kaiser Dep., Ex. 1-2; Kaiser Dec., Ex. A-C.)

79. What Defendants did not realize until mid-way through discovery is that Giulietta Management, through what appears to be a clerical error, did not always process the barback guarantees exactly as intended. (Twomey Dep. 48, 102-04, 134; Twomey Dec. ¶ 36; Kaiser Dec. ¶ 14.)

80. Documents indicate that barback tips were pooled, many times across multiple establishments, and then distributed to the barbacks on a bi-weekly basis, such that all of the tip money went to barbacks or other service employees, but not necessarily to the specific barback for whom the tips were dropped and not always during the appropriate pay period. (Kaiser Dep. 84-85, 90, 98-100, 117-18.)

81. This is because when calculating barback compensation, Mercedes Kaiser, the Giulietta Management employee who processed payroll, simply multiplied the guarantee offered to each barback by the number of shifts he worked and ensured that the barback received that amount each pay period. (Kaiser Dep. 23-25.)

82. The result was that there were times that a barback received more in tips than were specifically dropped for him and also times that a barback received less in tips than were specifically dropped for him, but nevertheless always received his guarantee. (Kaiser Dep. 79-80, 92.)

83. This was incorrect, because the purpose of the guarantee was to ensure a minimum amount of compensation to the barbacks, without foreclosing the possibility that a

12

barback would receive more in tips on a particularly busy night. (Twomey Dep. 104; Twomey Dec. ¶ 37; Kaiser Dec. ¶ 14.)

84. Defendants acknowledge that this was incorrect, as it was not as intended, and Giulietta Management has modified their method of distributing tips to barbacks. (Twomey Dep. 104; Twomey Dec. ¶ 38.)

85. In addition, Defendants have undertaken efforts to conduct an accounting to determine the amount of tips dropped for each barback each pay period and make any damaged barbacks whole. (Twomey Dec. ¶ 38.)

Dated: December 19, 2012
New York, New York

Respectfully submitted,

_____
Kristine A. Sova
Law Office of Kristine A. Sova
411 Lafayette Street, 6th Floor
New York, NY 10003
Tel. (646) 558-2296

*Attorney for Defendants*